IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PAULA EVETTA FOREMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-11-356-KEW |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Paula Evetta Foreman (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on November 20, 1965 and was 44 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant worked in the past as a certified nurse assistant, home health worker, and poultry line worker. Claimant

alleges an inability to work beginning June 30, 2004 due to limitations resulting from knee problems and "irregular brain waves."

## Procedural History

On August 1, 2007, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On November 2, 2009, an administrative hearing was held before ALJ Lantz McClain in Tulsa, Oklahoma. On December 9, 2009, the ALJ issued an unfavorable decision. On September 15, 2011, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of sedentary work with limitations.

4

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to determine all of Claimant's severe impairments; (2) reaching an improper RFC; and (3) failing to perform a proper analysis at step five.

**Consideration of Claimant's Severe Impairments**

In his decision, the ALJ found Claimant suffered from the severe impairments of seizure disorder and status post-surgery right knee. (Tr. 17). He determined Claimant retained the RFC to perform a range of sedentary work finding she can sit at least 6 hours in an 8 hour workday due to her right knee and avoid hazards such as height and open machinery due to seizures. (Tr. 18). After consultation with a vocational expert, the ALJ determined Claimant retained the RFC to perform the representative jobs of food order clerk, charge account clerk, miscellaneous laborer, and inspector. (Tr. 26). As a result, the ALJ concluded Claimant was not disabled. (Tr. 27).

Claimant first contends the ALJ should have found her reflex sympathetic dystrophy to be a severe impairment. On September 19, 2007, Claimant saw Dr. Margaret F. Tremwel, a neurologist. Claimant reported chronic lower extremity pain with associated excruciating knee pain. Claimant had been involved in several

motor vehicle accidents and had a fracture of the right lower extremity status post placement of hardware and pinning. Claimant told Dr. Tremwel that she experienced pain as a shooting sensation with allodynia that has a knifelike feeling to it form the distal lower extremity up to the knee. At nighttime if anything touches her knee it is a burning sensation, which prevented her from getting good sleep. (Tr. 297). Dr. Tremwel concluded that Claimant's seizure disorder should be treated and that "[s]he also has reflex sympathetic dystrophy of the right lower extremity." She proposed treating both conditions with an appropriate pain medication. (Tr. 298).

On October 30, 2007, Claimant was attended by Dr. Bradley M. Short, a board certified physician in physical medicine and rehabilitation. Dr. Short noted Claimant suffered from reflex sympathetic dystropny secondary to an ACL tear and surgery from 1995 which continued to cause Claimant significant pain and difficulty with mobility. (Tr. 359). Dr. Short also found upon examination that Claimant had no clubbing or cyanosis but had one to two plus edema, right lower extremity. She also had some warmth and pain with palpation of her right knee area. Her gait was minimally broad based and was antalgic, favoring her right lower extremity. (Tr. 360). Dr. Short suspected Claimant would have difficulty with prolonged standing and walking due to the

difficulties with her right lower extremity. Dr. Short recommended the use of an assistive device such as a cane. If she did use an assistive device, Dr. Short surmised she have difficulty in carrying objects. Id.

On July 13, 2009, Dr. Sri K. Reddy performed a consultative examination of Claimant. He found Claimant's right knee was swollen with diffuse tenderness and decreased range of motion with 10 degrees extension loss and flexion of 90 degrees. While Claimant used no assistive device, she ambulated with decreased step length, speed, and balance due to knee pain. (Tr. 394).

Dr. Reddy also completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical). He found Claimant could lift and carry up to 10 pounds frequently and up to 20 pounds occasionally, could sit for 8 hours at one time and 6 hours in an 8 hour workday, stand and walk for 2 hours at one time and 1 hour in an 8 hour workday. He found Claimant required the use of a cane to ambulate and that the use was medically necessary. (Tr. 395-96). The only other restrictions found by Dr. Reddy was only occasional use of foot controls with the right foot, she could never climb ramps or scaffolds and only occasionally kneel. Claimant also could never work at unprotected heights. (Tr. 397-99).

On July 30, 2009, Dr. Mark R. Rogow also completed a Medical

Source Statement. He found Claimant could occasionally and frequently lift and/or carry 10 pounds, stand and/or walk less than 2 hours in an 8 hour workday, must periodically alternate between sitting and standing, and was limited in the lower extremities for purposes of pushing and/or pulling. Dr. Rogow also restricted Claimant to never kneeling, crouching, or crawling. (Tr. 402). In his description of the supporting clinical findings, Dr. Rogow stated that "R knee locks up and sometimes gives out from under her. Spontaneously fell [approximately] 1 month ago and was taken to ER @ St. Edwards." (Tr. 402). Dr. Rogow also restricted Claimant in the environmental areas of temperature extremes, humidity/wetness, and hazards. He explained, "[b]ecause of derangement of knee, may be made worse by environmental factors." (Tr. 403).

In his treatment notes from July and August of 2009, Dr. Rogow diagnosed Claimant with internal derangement of the knee, knee pain, and seizure disorder. He reported Claimant was complaining of knee pain and that it locked up or gave out from under her. He found the right knee was mildly swollen with decreased range of motion. (Tr. 412-14). On September 11, 2009, Claimant reported to Dr. Rogow that her right knee was unchanged. (Tr. 409).

On October 9, 2009, Dr. Rogow noted Claimant's right knee was "quite bad" and pain radiated up and down the knee. The knee was

swollen tender with decreased range of motion. (Tr. 408).

The ALJ found in his decision that:

claimant's report of reflex sympathetic dystrophy (RSD) of the right lower extremity is medically non-determinable. Although Dr. Tremwell (sic) noted RSD based upon the claimant's complaints during a neurological consult on September 19, 2007, no objective evidence of RSD was noted. . . . Furthermore, Sri Reddy, M.D.'s consultative examination on July 13, 2009, did not reveal evidence of RSD of the right lower extremity. . .

(Tr. 18).

At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

The burden of showing a severe impairment is "de minimis," yet the presence of a medical condition alone is not sufficient at step

9

two. <u>Hinkle v. Apfel</u>, 132 F.3d 1349, 1352 (10th Cir. 1997); Soc. Sec. R. 85-28. A claimant must demonstrate he has a severe impairment that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D).

A claimant's testimony alone is insufficient to establish a severe impairment. The requirements clearly provide:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

42 U.S.C.A. § 423(d)(5)(A).

The functional limitations must be marked and severe that can be expected to result in death or to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(1)(C)(i); 20 C.F.R. § 416.927(a)(1).

The ALJ failed to engage in the required analysis of Claimant's reflex sympathetic dystrophy symptoms and the diagnoses of her treating physicians. Indeed, the ALJ seems to have ignored or rejected out of hand these physicians' opinions. For that matter, this Court is unsure of the precise "objective medical evidence" that "conclusively" shows Claimant did not suffer from reflex sympathetic dystrophy because he does not reference that evidence in his decision. Clearly, an ALJ cannot substitute his own medical opinion for that of a claimant's treating physician. Miller v. Chater, 99 F.3d 972, 977 (10th Cir. 1996). Moreover, although not specifically argued by Claimant, it does not appear the ALJ engaged in the proper analysis for giving Claimant's treating physicians' opinions reduced or no weight. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). (quotation omitted). On remand, the ALJ shall remedy these deficiencies.

### RFC Determination

Claimant contends the ALJ's RFC analysis is flawed in that he did not properly assess the opinions of Claimant's treating physicians. This Court has determined that the ALJ did not properly weigh Claimant's treating physicians' opinions in light of Watkins and, in fact, improperly substituted his medical opinion for that of the treating physicians. On remand, the ALJ shall reassess these opinions and their findings on limitations that Claimant's medical conditions impose on her ability to engage in

work related activity.

### Step Five Analysis

Claimant also contends the ALJ posed incomplete hypothetical questions to the vocational expert employed in this case by not including all of her limitations in the questioning. Until the ALJ properly reassesses his findings as to Claimant's medical conditions, it cannot be said that his hypothetical questions mirrored Claimant's limitations. On remand, the ALJ shall re-evaluate his questioning of the vocational expert after reassessing his RFC determination.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 25th day of March, 2013.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE

12